UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SIGNAL 88 LLC,<br><br>               Plaintiff,<br><br>   v.<br><br>SEAN MASTERSON ET AL.,<br><br>               Defendants. | Case No. C25-1156-BJR-SKV<br><br>ORDER DENYING APPOINTMENT OF COUNSEL |

Before the Court is Sean Masterson's ("Defendant Masterson") Motion for Appointment of Counsel under 28 U.S.C. § 1915(e)(1). *See* Dkt. 20. For the reasons below, the Court DENIES his request.

I.    <u>BACKGROUND</u>

This suit arises from a franchisor-franchisee dispute. Defendant Masterson purchased a franchise ("Franchise 366") from franchisor Signal 88 LLC ("Plaintiff"). Defendant Masterson ran Franchise 366 through a series of companies: Northern Sky, LLC, Washington Security Services Inc., and Eyey LLC (collectively "Franchisee Defendants"). *See* Dkt. 14 at 1–2. Defendant Masterson was the sole member or principal of all three companies and allegedly

personally guaranteed their obligations.  *See* Dkt. 14 at 1, 4–5; Dkt. 17 at 2–3.  The Franchisee Defendants are in different phases of dissolution or wind up.  *See* Dkt. 17 at 2–3.

Plaintiff alleges that Defendant Masterson "used Franchisee Defendants as part of a fraudulent shell game to mislead lenders, including Signal, into believing Franchise 366 was profitable in order to obtain loans that neither Masterson nor Franchisee Defendants could repay."  Dkt. 14 at 1–2.  Plaintiff claims Defendant pledged assets already securing debts owed to Plaintiff to obtain those loans.  *See* Dkt. 14 at 13.  Plaintiff further alleges that, when it began investigating Defendant Masterson's franchise operations, Defendant "Masterson used Franchisee Defendants to misappropriate Signal's trade secrets and other confidential and proprietary information, and to interfere with Signal's business expectancies and contracts[] so that Masterson could open a competing business through EYEY."  Dkt. 14 at 2.  As a result, Plaintiff states it lost at least 60 customers, including high-value accounts.  *See* Dkt. 14 at 17–19.  Plaintiff seeks millions in damages.  *See* Dkt. 14 at 28.

Defendant Masterson brought a related action in King County Superior Court, which was dismissed in favor of contractually required mediation.  *See* Dkt. 14 at 7–8.  Following an unsuccessful mediation, Plaintiff filed the instant suit.  *See* Dkt. 14 at 8.  Plaintiff brings breach of contract claims against the Franchisee Defendants for violating the terms of their franchise agreements, a breach of guarantees claim against Defendant Masterson, tortious interference and trade secret misappropriation claims against Defendant Masterson and Eyey LLC, and an unjust enrichment claim against all defendants.  *See* Dkt. 14 at 8, 19–27.  Defendant Masterson, appearing pro se, moved to dismiss the case and for expedited relief under the Uniform Public Expression Protection Act ("UPEPA").  *See* Dkts. 15, 21.  The Franchisee Defendants remain unrepresented and have not yet pled.

Defendant Masterson now moves the Court to appoint counsel for him under 28 U.S.C. § 1915(e)(1). *See* Dkt. 20 at 1. He represents that Plaintiff does not oppose his request. *See* Dkt. 20 at 1. The Honorable Barbara J. Rothstein referred Defendant's motion to the undersigned for disposition.

## II. LEGAL STANDARD

There is no constitutional right to counsel in a civil case. *Adir Int'l, LLC v. Starr Indem. & Liab. Co.*, 994 F.3d 1032, 1038–39 (9th Cir. 2021) (quoting *United States v. 30.64 Acres of Land, More or Less, Situated in Klickitat Cty., Wash.*, 795 F.2d 796, 801 (9th Cir. 1986)). "However, a court may under 'exceptional circumstances' appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1)." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (citing *Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004)). "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.'" *Id.* (emphasis in original) (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)). Neither factor is dispositive, and both are evaluated together. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

## III. ANALYSIS

Defendant Masterson argues appointment of pro bono counsel under § 1915(e)(1) is merited because he "is financially unable to retain counsel, and the exceptional circumstances of this case—including its legal and factual complexity, the millions of dollars at stake, and the significant power imbalance between the parties—warrant appointment of counsel in the interests of justice." Dkt. 20 at 1–2. The Court first addresses Defendant Masterson's financial position before determining whether this case presents exceptional circumstances.

A. <u>Financial Condition</u>

The Court does not find Defendant Masterson unable to afford counsel. His financial disclosure reveals substantial resources and appears to conflate his actual, personal liabilities with the Franchisee Defendants' anticipated liabilities. He reports earning $9,500 in monthly take-home pay and owning a home and at least one vehicle. *See* Dkt. 20 at 5. He does not disclose how much equity he has in his home or vehicles. He further reports a 401(k) retirement account worth $100,000 that is "not eligible for withdrawal." *See* Dkt. 20 at 6. He does not specify whether he lacks all access, as opposed to penalty-free access, to those funds. After covering "essential expenses," Defendant Masterson states he is left with "approximately $1,360 in monthly disposable income." Dkt. 20 at 6. He includes a mortgage, a car payment, various household expenses, and unspecified $600 loan payments in those monthly expenses. *See* Dkt. 20 at 6. Separate from his expenses, Defendant Masterson lists multiple liabilities, including thirty-one vehicle loans, small business loans, wage claims, and "[a]dditional miscellaneous claims" totaling $1,412,000 plus $22,000 in monthly commercial lease obligations of unspecified duration. *See* Dkt. 20 at 6. Those liabilities appear to be hypothetical or to presently belong to the Franchisee Defendants as none figure in Defendant Masterson's disposable income calculations.

Defendant Masterson argues he cannot afford counsel because his $1,360 in monthly disposable income would only buy one or two hours of attorney time at the rates he was quoted. *See* Dkt. 20 at 6. He informs that "[m]ultiple attorneys" advised him that representation in this litigation would "require retainers ranging from $50,000 to $100,000, with hourly rates between $600 and $1,200." Dkt. 20 at 4. One attorney advised him that he is "probably looking at upwards of $350,000 to $500,000 in total expenses." Dkt. 20 at 4–5. While Defendant

ORDER DENYING APPOINTMENT OF
COUNSEL - 4

Masterson's monthly disposable income may not cover his preferred counsel's fees, the § 1915(e)(1) standard is not inability to afford counsel without burden.  He has substantial assets to leverage or may seek representation that is more affordable or limited in scope.

Additionally, the scope of appointed representation sought by Defendant Masterson is unclear.  The Franchisee Defendants remain unrepresented.  Defendant Masterson did not list provision for their representation amongst his expenses or anticipated liabilities.  Whether their representation would be paid out of their own resources reserved for wind up, if any, or by Defendant Masterson is unclear from the information provided and Defendant Masterson's apparent comingling of personal and anticipated guarantor liabilities.[1]  To safeguard the Franchisee Defendants against default, Defendant Masterson, as their sole member or principal, would need to secure legal representation for them.  *See* Fed. R. Civ. P. 55; Local Civil Rule 83.2(b)(4).  To the extent Defendant Masterson's motion encompasses a request for counsel who would double as representation for the Franchisee Defendants, the Court cannot make such an appointment.

28 U.S.C. § 1915 only applies to natural persons.  *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 198, 201–03 (1993) (holding "only a natural person may qualify for treatment *in forma pauperis* under § 1915").  Irrespective of its means, "a corporation may appear in the federal courts only through licensed counsel." *Id.* at 202 (citing *Osborn v. Bank of U.S.*, 22 U.S. 738, 829 (1824)). "[T]hat rule applies equally to all artificial entities." *Id.*  Defendant Masterson's financial condition and position as the Franchisee Defendants' sole member, principal, or guarantor does not offer a loophole to the requirement that the Franchisee Defendants obtain counsel or the reservation of appointed counsel to natural

---

[1] While Defendant Masterson appears to list the Franchisee Defendants' liabilities as his own, he does not list any Franchisee Defendants' assets.  *See* Dkt. 20 at 6.

ORDER DENYING APPOINTMENT OF
COUNSEL - 5

persons. *See, e.g.*, *Panacea Plant Scis., Inc. v. Garland*, No. C24-477RSM, 2024 WL 1639226, at *1 (W.D. Wash. Apr. 16, 2024) (denying motion requesting that a corporate director represent an entity pro se and directing the entity to retain counsel); *Calzada-Zubiria v. Empyrean W. LLC*, No. CV-14-02106-PHX-DJH, 2014 WL 12672636, at *1–2 (D. Ariz. Dec. 16, 2014) (denying appointment of counsel for pro se defendants and an LLC defendant whose members were pro se defendants); *cf. United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (holding an entity defendant's president, sole shareholder, and statutory agent "with interests identical to the corporation's" could not make an "end run" around the counsel requirement by intervening pro se). In sum, Defendant Masterson's ability to pay for his own attorney, as well as his obligation to arrange for the Franchisee Defendants' representation, makes appointment of counsel inappropriate here.

B.   Exceptional Circumstances

Financial eligibility aside, exceptional circumstances do not exist here. Defendant Masterson makes no argument regarding the likelihood of his success on the merits.[2] He contends that the issues in this case are complex because they require knowledge of contract, tort, corporate, federal, and Washington state law and because thousands of pages of financial records, corporate documents, and communications will "require[] professional organization and analysis." Dkt. 20 at 7–8. He also points to Plaintiff's inclusion of "numerous dissolved business entities as defendants" as a factor "further complicating the legal and factual landscape of this case and necessitating expertise in corporate law and entity liability post-dissolution." Dkt. 20 at 2. In view of these challenges, he observes "[e]ach of [Defendant's] . . . claims, standing alone, would present significant challenges for a pro se litigant." Dkt. 20 at 10.

---

[2] Defendant Masterson alleges wrongdoing by Plaintiff, but none of his allegations address the merit of Plaintiff's claims and no counterclaims are presently before the Court. *See, e.g.*, Dkt. 20 at 3, 7–8.

1   "[D]ifficulties which any litigant would have in proceeding pro se[] . . . do not indicate exceptional factors." *Wood v. Housewright*, 900 F.2d 1332, 1335–36 (9th Cir. 1990); *Wilborn*, 789 F.2d at 1331 (finding difficulty navigating discovery common to pro se litigants and not indicative of a case's legal complexity).  Litigating any case pro se requires legal research and fact development.  Defendant Masterson highlights those common challenges without identifying any legal issues so complex as to impede him from articulating his arguments pro se.  On this Court's review of the record, this case presents relatively straightforward legal issues and Defendant Masterson has been successfully engaging pro se.  To date, he has filed dispositive motions, assembled exhibits, developed legal theories, articulated defenses, and moved for other relief as necessary.  *See, e.g.*, Dkts. 9, 11, 12, 13, 15, 20, 21.

Defendant Masterson also asks the Court to consider the high financial stakes and the parties' litigation resource discrepancies as indicators of this case's exceptionality.  *See* Dkt. 20 at 10–12.  Neither are proper factors under Ninth Circuit case law.  Whether a litigant may fare better with the assistance of counsel "is not the test." *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *rev'd en banc on other grounds*, 154 F.3d 952 (9th Cir. 1998).

## IV.   CONCLUSION

Defendant Masterson's Motion for Appointment of Counsel at Docket No. 20 is DENIED without prejudice.  The Clerk is directed to send copies of this Order to the parties and to the Honorable Barbara J. Rothstein.

Dated this 4th day of August, 2025.

S. KATE VAUGHAN
United States Magistrate Judge